# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| EPAC TECHNOLOGIES, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 3:12-cv-00463 |
| | ) CHIEF JUDGE CRENSHAW |
| THOMAS NELSON, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is a simple case about whether Thomas Nelson, Inc., had cause to terminate its contract with EPAC Technologies, Inc. ("EPAC"). After Thomas Nelson entered into the Master Services Agreement (the "Agreement") for EPAC to exclusively print its books for a period of five years, Thomas Nelson terminated the contract with EPAC and hired a different company to print the books for less money. Thomas Nelson argues it had to do so because the books EPAC printed were not good quality. EPAC argues that the books were good quality and Thomas Nelson just breached the Agreement to save money.

Before the Court are both parties' Motions for Summary Judgment. (Doc. Nos. 446, 490, 496.) EPAC does not respond to, and therefore does not oppose, Thomas Nelson's Motion as to EPAC's negligence claim. (Doc. No. 503); M.D. Tenn. L.R. 7.01(b) (failure to respond indicates no opposition). The Court also grants Thomas Nelson's Motion on EPAC's promissory fraud claim. Thomas Nelson only partially opposes EPAC's motion on Thomas Nelson's counterclaims. (Doc. No. 591.) Because there are obvious disputes of material fact, the Motions (Doc. No. 446, 490, 496) are otherwise denied. This simple case will proceed to a jury trial on September 25, 2018.

I.      Standard of Review

In reviewing a motion for summary judgment, the Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the "inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The nonmoving party then has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" Matsushita, 475 U.S, at 587. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

II.     Breach of Contract Claims

The breach of contract claims are subject to cross-motions for summary judgment. (Doc. No. 446, 490.) Based on the facts submitted to the Court, whether either party, or both, breached the Agreement (and additional non-disclosure agreements) in some way involves disputed material facts and it will be the jury's responsibility to determine the breaches. (Doc. Nos. 504, 586, 589, 647.) For example, it is disputed whether Thomas Nelson disclosed confidential pricing information to Lightning Source, LLC. (Doc. No. 586 ¶¶ 11, 14.) Further, EPAC disputes Thomas Nelson's assertion that "EPAC was never able to show that it could consistently make quality books at the volumes required." (Doc. No. 647 at 23.) Given that there are questions of fact for the

jury, including Thomas Nelson's disclosure of confidential information and EPAC's issue with producing quality books, summary judgment on the breach of contract claims is denied.

   III.   Fraud Claims

EPAC asserts two fraud claims in this action. (Doc. No. 168.) The first is promissory fraud, alleging that Thomas Nelson promised to "provide all of its requirements of the specified ranges or printing to EPAC" but had no intention of fulfilling such promise because it had already obtained a lower price from Lightning Source. (Id. at 26.) The second is fraud based on concealment, alleging that Thomas Nelson concealed a material fact, that it "fraudulently obtained a price for the same services from another vendor lower than previously provided by such vendor," prior to executing the Agreement." (Id. at 27.)

The Agreement states that it "will be governed by and construed in accordance with the laws of the State of New York." (Doc. No. 499-1 at 9.) Thomas Nelson moves for summary judgment on EPAC's fraud claims under this choice of law provision on the ground that, under New York law, there cannot be a fraud claim and a breach of contract claim arising out of the same conduct. (Doc. No. 449 at 9.) EPAC argues that Tennessee law applies to the fraud claims. (Doc. No. 503 at 16.)

Federal courts apply the forum state's choice of law provisions to state law claims, such as tort claims. Performance Contracting, Inc. v. DynaSteel Corp., 750 F.3d 608, 611 (6th Cir. 2014) (citing Wallace Hardward Co. v. Abrams, 223 F.3d 382, 391 (6th Cir. 2000)). Although no party cited a Tennessee Supreme Court decision regarding whether the fraud claim is subject to the contractual choice of law provision, the Sixth Circuit has held that Tennessee courts would apply a tort choice of law provision rather than a contractual one unless the contract states otherwise. Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga., 723 F.3d 640, 646 (6th Cir. 2013) (interpreting

a choice of law clause that states that the contract is to be interpreted consistent with "all the applicable provisions of the Constitution and general laws of Georgia," holding that "[n]othing in the choice of law contract provision suggests that it extends to tort claims").

When determining whether a tort claim is covered under a contractual choice of law clause or whether it is separate, a court in this District previously held that the question is whether the alleged torts "related to and arise from the Agreement, and concern the defendant's action pursuant to the Agreement," which would be subject to the contractual choice of law clause, or whether they related to the defendant's "representations made before forming the Agreement." Goad v. Lewis, No. 3:13-cv-1102, 2014 WL 7929829, at *1 (M.D. Tenn. Nov. 21, 2014) (Brown, M.J.), adopted relevant part by 2015 WL 867144, at *2 (Feb. 27, 2015) (Campbell, J.).[1] In Goad, the contract stated that it was to be "governed by and construed in accordance with the internal laws of the State of Texas." Id. at *1 n.5. The court held that such an agreement is broad enough to cover tort claims arising under the contract, but does not reach those claims that allege fraudulent misrepresentations prior to entering the agreement and are "merely incidental to the contractual relationship." Id. (quoting Boydstun Metal Works, Inc. v. Parametric Tech. Corp., No. CIV. 99–480–AS, 1999 WL 476265, at *4 (D. Or. May 19, 1999)).

Here, applying Tennessee law, the Agreement's choice of law clause is similar to the one in Goad, stating that it "will be governed by and construed in accordance with the laws of the State of New York." (Doc. No. 499-1 at 9.) The promissory fraud claim relates to and arises from the Agreement and concerns Thomas Nelson's actions under the Agreement. (Doc. No. 168 at 26-27.)

---

[1] Goad, 2014 WL 7929829, at *1 n.5, cited favorably as persuasive authority Moses v. Business Card Express, Inc., 929 F.2d 1131, 1140 (6th Cir. 1991), in which the Sixth Circuit held that, under Michigan law, a contractual choice of law provision applied to fraud claims when the fraud was seeking to invalidate the contract. Moses, 929 F.2d at 1140 (distinguishing when a party is asserting fraud to attempt to avoid enforcement of the contract compared with other instances of fraud).

4

The claim alleges that Thomas Nelson promised to take action under the contract, did not take such action and never intended to take such action, and therefore it is fraudulent. (Id.) At the heart of this claim, it is dispositive whether Thomas Nelson ultimately performed under the contract and, if not, whether Thomas Nelson knew it would not perform at the time it entered the contract. Because this claim "concerns the defendant's actions pursuant to the Agreement," it is subject to New York law.

EPAC does not respond to Thomas Nelson's argument that under New York law, a plaintiff cannot bring a fraud claim in addition to a breach of contract action unless the plaintiff alleges the defendant has a separate legal duty from the duty to perform under a contract, the plaintiff demonstrates a fraudulent misrepresentation collateral or extraneous to the contract, or the plaintiff seeks special damages. (Doc. No. 503); see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (holding that New York law does not allow a fraud claim in a breach of contract case unless under one of those three scenarios) (citing references omitted). EPAC does not contest that (1) the legal duty to perform under the contract is the same, (2) the fraudulent misrepresentation is not collateral or extraneous to the contract; and (3) the damages for this claim are the same as under the contract. (Doc. No. 503.) Accordingly, the promissory fraud claim is dismissed. EPAC will be able to recover all available damages from Thomas Nelson's alleged breach of contract through its breach of contract claim. (Doc. No. 168 at 21.)

However, the fraudulent concealment tort claim is separate from the contract. EPAC alleges that Thomas Nelson had material information that it fraudulently concealed from EPAC in order to induce it to enter the contract. (Doc. No. 168 at 27.) This claim does not concern Thomas Nelson's actions under the contract, but rather representations made prior to entering the contract.

Presumably, EPAC would be able to bring this fraudulent concealment claim even if Thomas Nelson performed under the contract if that concealment caused damages. As such, the Court does not apply the Agreement's choice of law clause to this claim.

Rather than looking at the Agreement, Tennessee courts would apply the most significant relationship test contained in the Restatement (Second) of Conflict of Laws to determine which state law governs tort claims. Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992) (citing Restatement (Second) of Conflict of Laws (1971)). To apply the fraud provision of the Restatement, the Court needs to know facts regarding (1) where the plaintiff suffered its harm, (2) where the defendant's false representations or concealments took place, and (3) whether a different state has a more significant relationship to the fraud. Restatement (Second) of Conflict of Laws § 148. The parties do not supply sufficient facts for such an analysis. (Doc. Nos. 504, 586, 589, 647.) The only facts involving locations are that Thomas Nelson was located in Tennessee, the parties agreed that the Agreement would be "governed and construed" by New York law, and the Fairfield facility is located in Ohio. These limited facts are insufficient for the Court to conduct any sort of meaningful analysis on choice of law.

The Court therefore denies summary judgment on this issue, and will make a final determination of which law applies at trial.

IV. Damages

Thomas Nelson moves for summary judgment on the ground that EPAC may not seek (1) unjust enrichment damages; (2) punitive damages; (3) lost profits damages; (4) damages for casebound books; and (5) damages after EPAC closed its Fairfield, Ohio facility. (Doc. No. 449 at 13-17.) EPAC responds that it is not seeking unjust enrichment damages. As to the fifth ground, there is no evidence that EPAC would have closed the Fairfield facility but for Thomas Nelson's

6

termination of the Agreement (Doc. No. 504 ¶ 5 (Response); Doc. No. 503 at 20), so summary judgment on those damages is denied. The Court will address the other three categories.

The Agreement provides that, except for breaches of the non-disclosure agreement, "neither party will be liable to the other party for any indirect, incidental, consequential or exemplary damages, including but not limited to those for business interruption or loss of profits, even if such party has been advised of the possibility of such damages." (Doc. No. 499-1 at 7.)

1. Punitive Damages

Thomas Nelson moves for summary judgment on punitive damages because the Agreement precludes that category of damages. EPAC argues that the fraud claim allows for punitive damages. Because the Court is reserving decision on which state's law applies to the fraud claims, the Court will also reserve decision on whether EPAC can seek punitive damages on those fraud claims.

2. Lost Profits Damages

The Agreement precludes a consequential damages award based on lost profits. (Doc. No. 499-1 at 7.) "Lost profits may be either general or consequential damages, depending on whether the non-breaching party bargained for such profits and they are 'the direct and immediate fruits of the contract.'" Biotronik A.G. v. Conor Medsystems Ireland, Ltd., 11 N.E.3d 676, 680 (N.Y. 2014) (citing Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 109 (2d Cir. 2007)). "[D]amages must be evaluated within the context of the agreement," including whether lost profits constitute general or consequential damages. Id. at 679.

The "distinction at the heart" of the question of whether lost profits are general or consequential is "whether the lost profits flowed directly from the contract itself or were, instead, the result of a separate agreement with a nonparty." Id. at 681. For example, when a developer of

medical devices entered into an exclusive distribution agreement with a distributor but then breached the contract by recalling the product, the New York Court of Appeals held that the lost profits stemming from the developer's breach, i.e., preventing the distributor from selling the product, were general damages. Id. at 683. However, the Court of Appeals cited favorably a decision from the United States District Court for the Southern District of New York that held that damages caused by Pepsi Cola's breach of an exclusive distribution agreement by allowing one of the plaintiff's competitors to enter the plaintiff's exclusive distribution area were consequential damages. The court held that those profits were only consequential to the breach because they were "lost profits from sales to third-parties that [were] not governed" by the contract. Id. at 807-08 (quoting Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co., 650 F. Supp. 2d 314, 322 (S.D.N.Y. 2009)). The lesson to be learned from these cases is that, for an award of lost profits to be general damages, the defendant's breach must prevent the plaintiff from performing under the contract. If proven at trial, the plaintiff is entitled to those damages it would have received had the contract not been terminated.

Here, EPAC's lost profits are general damages. The Agreement provided that Thomas Nelson would exclusively use EPAC to bind its books, and Thomas Nelson terminated that agreement. (Doc. No. 491-3 at 2.) That breach prevented EPAC from printing books for Thomas Nelson and getting paid for those books as contemplated in the Agreement. Just because Thomas Nelson then subsequently used other sources to print its books does not make EPAC's damages consequential. What is dispositive here is that Thomas Nelson completely terminated its contract with EPAC, rather than allowing third parties (such as Lightning Source) to invade the province of EPAC's exclusivity agreement. If Thomas Nelson breached the contract, EPAC may recover lost profit general damages. Summary judgment is denied.

3. Casebound Books

It is disputed whether the parties agreed on all material terms to print casebound books. (Doc. No. 504 at 2.) Thomas Nelson argues that the parties did not because the price was not in the Agreement, but EPAC presented a declaration that the pricing was orally agreed to at a $2.00 premium. (Id.) Specifically, Robert Cubelo, the former Senior Vice President of Sales at EPAC, averred that Gower told him that "Thomas Nelson agreed to pay a $2.00 premium on case-bound books." (Doc. No. 506-1 at 7.) The Agreement contemplates such a contract, stating: "Upon mutual acceptance of the quality and pricing, [case-binding books] will be added to the Work Product." (Doc. No. 499-1 at 3.) However, the Agreement also had an integration clause. (Id. at 11.) That clause states that the Agreement "may be modified only in writing signed by both parties." (Id.)

New York law strictly enforces integration clauses, including the prohibitions of oral modifications. Goodyear Publ'g Co., Inc. v. Mundell, 427 N.Y.S.2d 242, 243 (N.Y. App. Div. 1980) (citing N.Y. Gen. Oblig. Law § 15-301(1)). This rule is not without exceptions: courts recognize the partial performance exception to this rule, where an oral agreement "may modify a preexisting written agreement if (1) there has been partial performance of the oral modification and (2) that partial performance is unequivocally referable to the oral modification—that is, the conduct constituting the alleged partial performance must not be compatible with the written agreement." Mooney v. AXA Advisors, L.L.C., 19 F. Supp. 3d 486, 504 (S.D.N.Y. 2014) (citing Rose v. Spa Realty Assocs., 366 N.E.2d 1279, 343-44 (N.Y. 1977)). Here, Cubelo declared that "EPAC had already produced many case-bound books for Thomas Nelson," indicating that there may have been partial performance of this oral modification. (Doc. No. 506-1 at 7.) Accordingly, summary judgment is denied based on disputed facts regarding the partial performance of the oral modification.

V.　Counterclaims

EPAC moves for summary judgment on Thomas Nelson's counterclaims for fraudulent misrepresentation and negligent misrepresentation. (Doc. No. 496.) Thomas Nelson concedes summary judgment should be granted regarding EPAC's statements regarding book standards, but disputes summary judgment for EPAC's statements regarding the capacity of the Fairfield facility. (Doc. No. 591 at 2.) Summary judgment is inappropriate under either New York or Tennessee law.

Under New York law, to prove a claim of fraudulent misrepresentation, a plaintiff must prove "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1108 (N.Y. 2011) (citing Lama Holding Co. v. Smith Barney, 668 N.E.2d 1370 (N.Y. 1996)). A claim of negligent misrepresentation under New York law "requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." Id. at 1109 (citing J.A.O. Acquisition Corp. v. Stavitsky, 863 N.E.2d 585 (N.Y. 2007)). Tennessee, on the other hand, has four elements for the tort of negligent misrepresentation: (1) "the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest"; (2) the defendant supplies faulty information meant to guide others in their business transactions"; (3) "the defendant fails to exercise reasonable case in obtaining or communicating the information"; and (4) "the plaintiff justifiably relies upon the information." Dixon v. Producers Agric. Ins. Co., 198 F. Supp. 3d 832, 837 (M.D. Tenn. 2016) (citing Robinson v. Omer, 952 S.W.2d 423 (Tenn. 1997)). Tennessee then adds an additional

requirement for the tort of fraudulent misrepresentation, namely, that "the false representation [must be made] either knowingly or without belief in its truth or recklessly [with regard to its truth]." Id. at 838 (citing Metro. Gov't v. McKinney, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)).

There are material facts in dispute regarding whether the Fairfield facility was able to produce sufficient volume of books for Thomas Nelson's demands (Doc. No. 647 ¶ 33) and, if not, whether EPAC knew or should have known that its Fairfield facility could not fulfill Thomas Nelson's demands. (See Doc. No. 647 (detailing the alleged-problems that EPAC encountered during the testing phase of the Agreement)). Accordingly, under either state's law, the dispute over whether EPAC gave Thomas Nelson false information precludes summary judgment. Summary judgment is therefore denied.[2]

VI. Motions to Strike

There are also two motions to strike declarations and accompanying documents. EPAC moves to strike Marvin Maphet's declaration (Doc. No. 599) and accompanying spreadsheet (Doc. No. 599-1), in which he states that the EPAC delivered books late. (Doc. No. 649, 654.) Thomas Nelson moves to strike Annette DeVries' Declaration (Doc. No. 493-2), in which she states that all books ordered by Thomas Nelson were delivered on time or early. (Doc. No. 598.) These declarations further exemplify disputed material facts in this case. However, as explained more fully in Section II of this Memorandum Opinion, the Court denied summary judgment based on disputed facts other than simply these declarations, such as disputes regarding the quality of the books. Because the Court did not rely on either declaration in ruling on the motions for summary judgment, the Motions to Strike are denied as moot.

---

[2] The alleged-misrepresentations would have occurred prior to entering the Agreement, so they are not governed by the choice of law provision.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE