IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EPAC TECHNOLOGIES, INC., | ) |
| Plaintiff, | ) Civil Action No. 3:12-cv-00463 |
| v. | ) Chief Judge Crenshaw |
| | ) Magistrate Judge Newbern |
| HARPERCOLLINS CHRISTIAN PUBLISHING, INC., f/k/a THOMAS NELSON, INC., | ) JURY DEMAND |
| Defendant. | ) |

**PLAINTIFF'S MOTION *IN LIMINE* # 7 TO PRECLUDE EVIDENCE AND/OR ARGUMENT REGARDING ANY PURPORTED SPOLIATION OF EVIDENCE BY EPAC**

Plaintiff, EPAC Technologies, Inc. ("EPAC"), respectfully moves this Court to enter an order precluding Defendant, HarperCollins Christian Publishing, Inc. ("Thomas Nelson"), from offering any evidence and/or argument regarding any purported spoliation of evidence by EPAC, issues that Thomas Nelson began raising by motion belatedly filed on April 20, 2018 (Doc. No. 398) shortly after this Court rendered its ruling substantially affirming the Special Master's Report and Recommendation as to Thomas Nelson's spoliation including two adverse inferences against it. (Doc. No. 379.) Thomas Nelson's motion has been followed by *seven* briefs on a host of issues, all of which are without foundation yet pending and before the Court. (*See* Doc. Nos. 401, 434, 474, 531, 572, 629, and 776). While those submissions should all be rejected, EPAC files this motion as a precaution, as none of this should be permitted near the jury.

### I. FACTUAL BACKGROUND

EPAC predicted in December 2015, when the Special Master's findings about Thomas Nelson's spoliation of evidence were imminent, that Thomas Nelson would "engage in a strategy of burying EPAC and the Court in a 'blizzard of motions and arguments [that would be] thrust

upon the Court in an effort to distract the focus from the serious issues of Thomas Nelson's evidence spoliation and suppression in this case.' (Doc. No. 210)." (Doc. No. 428.) Ever since, Thomas Nelson has stonewalled EPAC's discovery efforts[1] while seeking to open new discovery fronts of its own. For example, on December 15, 2015, Thomas Nelson began to seek discovery of evidence as to EPAC's post-termination "quality" and "capabilities," including seeking information as to the post-termination performance of the EPAC2 printing system even after EPAC sold its Fairfield, Ohio and Edison, New Jersey facilities and licensed its EPAC2 technology to Ingram Content Group/Lightning Source, Inc. ("LSI") effective March 21, 2012 (the "Transaction"). (*See* Doc. No. 203.)

After issuing a subpoena to LSI for such information in January 2016 (Doc. No. 513-5), Thomas Nelson then abandoned its subpoena to LSI, only later to seek such information from EPAC. (Doc. No. 563-1 ¶¶ 5-7.) EPAC responded that it did not have such post-termination information, but out of an abundance of caution – and to avoid any claim that it had spoliated such information – EPAC issued a subpoena to LSI, to which LSI objected. (Doc. No. 346-1.) After that objection, Thomas Nelson abandoned its efforts to obtain this information from LSI and did nothing to pursue this information until recently, on June 18, 2018, when it sought to compel information subject to EPAC's 2016 subpoena to LSI directly from EPAC. (Doc. No. 561-1.) This is but one of the many parts of Thomas Nelson's serial motions for spoliation sanctions against EPAC, all of which are unfounded, as discussed below.

**1. Thomas Nelson's Spoliation Sanctions Motion Filing No. 1. (Doc. Nos. 398, 401.)**

On April 20, 2018, Thomas Nelson falsely claimed that EPAC had destroyed the very records EPAC subpoenaed from LSI in 2016, and sought an order precluding EPAC from

---

[1] Witness the still ongoing Delta Set protocol and ERP/WMS-related proceedings that were ordered on June 22, 2018 (Doc. No. 472, affirmed at Doc. No. 619), each of which has been obstructed for weeks by Thomas Nelson.

"introducing evidence that the EPAC2 platform was capable of consistently filling production orders as required by the Master Services Agreement dated August 1, 2010" and "offering the testimony of Charles R. Mahla at trial or any other evidence concerning lost profits from anticipated book sales." (Doc. No. 398 at 2.) As noted above, Thomas Nelson has again abandoned seeking the very information it falsely claimed EPAC spoliated.

### 2. Thomas Nelson's Spoliation Sanctions Motion Filing No. 2. (Doc. No. 434.)

On May 14, 2018, after EPAC explained again what happened to the subject production data, Thomas Nelson filed a reply claiming instead that EPAC "voluntarily lost" the data by transferring it to LSI. (Doc. No. 434 at 1.) Thomas Nelson repeated its request for two evidentiary preclusions and stated that while it did not seek a default, "even heavier sanctions" may be warranted. (*Id*. at 8.)

### 3. Thomas Nelson's Spoliation Sanctions Motion Filing No. 3. (Doc. No. 474.)

On June 22, 2018, Thomas Nelson, supported by a cryptic Declaration from Phil Clark, LSI's chief technology officer that was filled with ambiguity, supplemented its motion for spoliation sanctions to seek a default judgment on the unfounded basis that EPAC had either spoliated evidence or was withholding it, asserting that it was on servers that Mr. Clark said were returned to EPAC. (Doc. No. 474 at 2, 4.) EPAC responded with detailed declarations setting the record straight about what happened to the servers that supposedly contained discoverable information. (*See* Doc. Nos. 511, 512, 512-1, -2.) Thomas Nelson has done nothing to pursue such information.

To the contrary, EPAC learned in July 2018 that, in fact, historical order information that was conveyed to LSI as a part of the Transaction, which Mr. Clark implied no longer existed at LSI, was in fact available and was used and accessed post-Transaction by LSI, which EPAC disclosed to the Court and Thomas Nelson and the Court (*see* Doc. No. 566, and case

- 3 -

4835-8650-3081.1  Case 3:12-cv-00463  Document 817  Filed 08/31/18  Page 3 of 8 PageID #: 18067

management conference on July 20, 2018), after which EPAC produced the responsive information at that site, Thomas Nelson did nothing else to pursue such information.

**4. Thomas Nelson's Spoliation Sanctions Motion Filing No. 4.  (Doc. No. 531.)**

On July 6, 2018, Thomas Nelson supplemented its spoliation sanctions motion filing by filing its Reply to EPAC's Supplemental Memorandum in Opposition to Thomas Nelson's Motion for Sanctions.  (Doc. No. 531.)  Thomas Nelson's Reply, another transparent attempt to distract from Thomas Nelson's own discovery misconduct, failed to show that the alleged spoliated data was lost or destroyed.  (*See* Doc. No. 566.)

**5. Thomas Nelson's Spoliation Sanctions Motion Filing No. 5.  (Doc. No. 572.)**

On July 17, 2018, Thomas Nelson filed another motion for spoliation sanctions, this time on the basis that EPAC had allegedly failed to preserve emails "reflecting EPAC's inability to print high-quality books at production-level volume" (Doc. No. 572 at 1), now seeking an additional "curative remedy":

> A jury instruction that (1) EPAC had a duty not to lose or destroy emails about whether the EPAC2 platform could consistently fulfill orders on a high-volume basis in a manner that met Thomas Nelson's quality standards; (2) EPAC lost these emails; and (3) the jury may presume that, in the lost emails, EPAC admitted that the EPAC2 platform could not meet the quality and volume production requirements of the MSA.

(*Id*. at 2.)  This motion was based on Thomas Nelson's regurgitated complaint (from 2015 and 2016) that because Thomas Nelson's Special Master-supervised restoration of emails identified a few emails that EPAC had not produced and that LSI had produced a few emails with EPAC that EPAC had not produced, EPAC must either have destroyed or withheld them.  (*See* Doc. No. 614.  *See also* Doc. No. 231-3.)  Beyond an unsupported assertion of prejudice, Thomas Nelson did not even attempt to show how it was prejudiced as to the emails that it had from its own systems and from LSI that it claimed EPAC had not produced.

**6. Thomas Nelson's Spoliation Sanctions Motion Filing No. 6. (Doc. No. 629.)**

On July 25, 2018, Thomas Nelson supplemented its spoliation sanctions motion filing with its Reply in Further Support of Thomas Nelson's Motion for Sanctions for EPAC's Spoliation of Email, claiming that EPAC "failed to preserve a 'massive amount' of emails." (Doc. No. 629 at 1.) At a hearing on August 16, 2018, Thomas Nelson argued that it should be awarded a default judgment on the basis of emails it had not even seen. (Doc. No. 764 at 130.) The Court reviewed the emails *in camera*, correctly anticipated that many of the emails had already been produced (Doc. No. 739 at 2-3), and EPAC subsequently produced the emails after obtaining them from LSI.

**7. Thomas Nelson's Spoliation Sanctions Motion Filing No. 7. (Doc. No. 776.)**

On August 28, 2018, Thomas Nelson filed its latest "spoliation" supplement, asserting without foundation that EPAC's tax returns and financial statements were spoliated. (Doc. No. 776.) In fact, EPAC promptly produced the tax returns available to it (2012-2015) the same day the Court ruled, August 24, 2018 (Doc. No. 758; the applicable order only gave EPAC four business days to comply and EPAC's accountant was out due to medical leave in connection with previously-scheduled surgery, and EPAC filed a timely Rule 6(b)(1)(A) motion for an extension), and notified Thomas Nelson of its plans to produce the balance of information ordered to be produced that was available to it. On Monday, August 26, 2018, EPAC produced its 2012-2015 income statements and balance sheets for EPAC, followed early the next morning by *pro forma* income statements for EPAC2 for the last six months of 2010 and the first three months of 2012. The annual financial statements that EPAC has produced were prepared in the last few days for this case, as EPAC does not regularly prepare annual financial statements as it is not required to do so, not being a public company.

## II. ARGUMENT

This Court has held that spoliation motions should be filed timely, and has looked unfavorably on and denied motions such Thomas Nelson's, which seeks the entry of a default judgment shortly before trial, that may be part of a tactic to distract an opponent's pretrial preparation. *Am. Nat'l Prop. & Cas. Co. v. Campbell*, No. 3:08-cv-00644, 2011 WL 3021399 (M.D. Tenn. July 22, 2011) (vacated per settlement) (Trauger, J.). That is certainly the case here, and Thomas Nelson should not be permitted to present any evidence and/or testimony as to spoliation of evidence by EPAC.

The plaintiff in *Campbell*, with trial set for August 23, 2011, filed a motion for sanctions for spoliation of evidence on July 6, 2011 despite having learned of the spoliation in May 2010. *Campbell*, No. 3:08-cv-00644, 2011 WL 3021399 at *1. This Court stated that courts should be wary of any spoliation motion made on the eve of trial. *Id.*, at *2 (citing *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06–cv–569, 2008 WL 2491747, at *2–3 (S.D. Ohio June 18, 2008)). Indeed, spoliation motions should be filed as soon as reasonably possible after discovery of the facts that underlie the motion. *Id.* (quoting *Goodman v. Praxair Services, Inc.*, 632 F.Supp.2d 494 (D. Md. 2009)). Ultimately, this Court denied the plaintiff's motion for sanctions as untimely because when plaintiff filed the motion, the spoliation had occurred 14 months earlier, fact discovery had been closed for more than four months, and trial was set to begin in less than seven weeks. *Id.* at *3.

In the present case, Thomas Nelson has filed *seven* briefs alleging spoliation by EPAC, all of which were filed *after* the Magistrate Judge recommended the Court enter two spoliation sanctions in the form of adverse jury instructions against Thomas Nelson for its discovery misconduct. (Doc. Nos. 226, 379.) This includes Thomas Nelson's latest spoliation allegation that it made on August 28, 2018, less than one month prior to trial. (Doc. No. 776.) While the

Court has not yet ruled on Thomas Nelson's hydra-headed motion for spoliation sanctions and trailing filings, the foregoing discussion makes it readily apparent that there is no basis for any sanctions. Nor is there any basis for any purported evidence of spoliation by EPAC to be presented to the jury. This is obviously an effort to blunt the impact of the *legitimate* spoliation sanctions entered by this Court after the three and a half years that included the appointment of a Special Master due to Thomas Nelson's spoliation of evidence and the Court's consideration of the Special Master's Report and Recommendation. (Doc. Nos. 226, 379, and 435.) There is no basis for any spoliation sanctions to be entered against EPAC, much less to present any purported evidence of the same to the jury. Thomas Nelson has sought to rush its serial "spoliation sanctions" motions to judgment at the last minute in order to distract the Court from Thomas Nelson's continuing discovery misconduct,[2] to muddy the waters at trial and confuse the jury.

Since no spoliation by EPAC has been found, any reference to EPAC's alleged spoliation is irrelevant and unduly prejudicial. As a result, it must be excluded. *See McCon v. Perez*, No. 1:17CV77-LG-RHW, 2018 WL 4006971, at *2 (S.D. Miss. Aug. 20, 2018) (granting motion in limine excluding evidence regarding alleged spoliation as irrelevant and unduly prejudicial); *Wiedeman v. Canal Ins. Co.*, No. 1:15-CV-4182-WSD, 2017 WL 5563246, at *3 (N.D. Ga. Nov. 20, 2017) (same).

### III. CONCLUSION

For the reasons set forth above, EPAC pays that this Court enter an order preventing

---

[2] *See, e.g.*, Thomas Nelson's multiple delays of the Delta Set protocol ordered on June 22 (Doc. No. 472) by unnecessarily seeking "clarifications," resulting in multiple Court orders reiterating the Delta Set protocol process (Doc. Nos. 619 at 8, 679, 691, 692, 701, 719); Thomas Nelson's failure to provide EPAC access to the Court-ordered ERP/WMS data (Doc. Nos. 472, 727); and Thomas Nelson's instructions to Marvin Maphet in his Court-ordered deposition as to the recovery of ERP/WMS data not to answer questions about the ERP/WMS and Special Master Ball's question as to the same. (Doc. No. 621-1 at 256:10-259:3, 263:20-264:9.)

Thomas Nelson from offering any evidence and/or argument regarding any purported spoliation by EPAC.

Respectfully submitted,

*/s/ Thor Y. Urness*
Thor Y. Urness (#013641)
R. Brandon Bundren (#030985)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
615-252-2384
turness@bradley.com
bbundren@bradley.com

Jonathan M. Redgrave
REDGRAVE LLP
14555 Avion Parkway, Suite 275
Chantilly, Virginia 20151
703-592-1155
jredgrave@redgravellp.com

*Attorneys for EPAC Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that service of the foregoing document is being made via ECF to the following on August 31, 2018:

Timothy L. Warnock
Steven A. Riley
John R. Jacobson
D. Alexander Fardon
W. Russell Taber, III
Jenna Lyn Harris
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203

/s/ *Thor Y. Urness*
Thor Y. Urness