UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EPAC TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HARPERCOLLINS CHRISTIAN PUBLISHING, INC., f/k/a THOMAS NELSON, INC., <br><br> Defendant. | Case No. 3:12-cv-00463 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

As directed by the Court (Doc. No. 1159), Plaintiff EPAC Technologies, Inc., has filed a comprehensive motion for determination of its reasonable costs and attorneys' fees incurred during the Special Master proceedings pursuant to the Court's March 29, 2018 orders (Doc. Nos. 379, 380). (Doc. No. 1161.) Defendant Thomas Nelson, Inc., has filed a response in opposition (Doc. No. 1162), and EPAC has filed a reply (Doc. No. 1163). Because this fee award is made under Federal Rule of Civil Procedure 37 and addresses only discovery issues subject to the Magistrate Judge's authority, the Court has referred the motion to the Magistrate Judge for disposition. (Doc. No. 1158.) For the reasons that follow, EPAC's motion (Doc. No. 1161) is GRANTED IN PART and DENIED IN PART.

I.      **Background**

EPAC's motion arises out of the Special Master proceedings that are well-documented elsewhere in the record and will only be recounted here to the extent they are relevant to EPAC's fees motion. (Doc. Nos. 379, 435.) The Court appointed Special Master Craig Ball on November 18, 2014, on EPAC's motion, "to investigate and advise the Court concerning the nature, extent

and sufficiency of the identification, preservation, collection, search, processing and production by Thomas Nelson ... of potentially responsive and relevant information, particularly electronically stored information ("ESI") as it relates to discovery in this cause." (Doc. No. 136, PageID# 2003, ¶ 2.) In June 2015, dissatisfied with the progress of Ball's investigation, EPAC filed a motion to appoint a substitute special master. (Doc. No. 155.) One month later, EPAC moved to stay the Special Master's work, arguing that the proceedings had become "infected with a bias that has resulted from the [motion] for a substitute Special Master." (Doc. No. 163, PageID# 2331.) Thomas Nelson opposed both motions (Doc. Nos. 158, 169), and the Court ultimately denied them (Doc. No. 227).

Ball issued a report and recommendation on January 29, 2016, finding that Thomas Nelson's "conduct in discovery failed to meet minimum standards of diligence and competence"; that, "[t]hrough negligence and gross inattention, Thomas Nelson . . . failed to interdict the deletion of almost 1.5 million e-mail messages and disposed of structured data it was obliged to preserve"; and that, "[a]s a result, electronic and tangible evidence material to the issues before the Court was lost," some of which likely could not be recovered through additional discovery. (Doc. No. 226, PageID# 3807.) The Special Master also found that none of Thomas Nelson's "multiple culpable instances of incompetence, misinformation and lack of diligence . . . manifested as intentional acts to deprive EPAC of evidence in this cause so as to warrant the most serious sanctions." (*Id.* at PageID# 3808.) Ball recommended three curative measures: (1) exclusion of evidence and adverse inference jury instructions to address the loss of the books and book samples that were the subject of the action and the loss of ESI; (2) shifting 75% of his fee to Thomas Nelson; and (3) permitting the redeposition of key witnesses at Thomas Nelson's expense, exclusive of attorneys' fees. (*Id.*) Addressing the award of fees at the conclusion of his report, the Special Master found:

> EPAC embraced a style of advocacy whereby the advocate repeats assertions with escalating frequency, length and hyperbole, hoping they might be mistaken as true notwithstanding a lack of supporting evidence. Certainly EPAC had ample cause to complain of Thomas Nelson, Inc.'s bungled discovery efforts, but the petulant, scorched earth nature of EPAC's responses coupled with loose assertions of fact undermined the process and cannot be commended to the Court as effective or inexpensive. Accordingly, I suggest no more than a nominal award of attorney's fees.

(*Id.* at PageID# 3827 n.37.)

This Magistrate Judge adopted the Special Master's report in part and rejected it in part over both parties' objections. (Doc. No. 379.) The Magistrate Judge found that Thomas Nelson had negligently disposed of books it had a duty to preserve and did not make reasonable efforts to preserve ESI, including e-mails and warehouse (ERP/WMS) data. (*Id.*) To address those failures, the Magistrate Judge ordered that curative jury instructions regarding the loss of the books and warehouse data be given, that certain evidence favorable to Thomas Nelson be excluded, and that EPAC be permitted to redepose witnesses at Thomas Nelson's expense, excluding attorneys' fees. (*Id.*)

The Magistrate Judge found that EPAC had initially offered to pay the Special Master's fee as part of its motion for his appointment, with a provision that the costs be shifted upon a finding that Thomas Nelson had made omissions in its discovery production or engaged in spoliation of evidence. (*Id.* (citing Doc. No. 68).) The Magistrate Judge found "that the loss of evidence discovered by the Special Master and the delays in production by Thomas Nelson that occasioned the Special Master's appointment warrant[ed] imposing on it a substantial share of the associated costs." (*Id.* at PageID# 9812.) Although the Magistrate Judge did not adopt the Special Master's characterization of EPAC's conduct during the proceedings before him, the Magistrate Judge found "that EPAC should also shoulder some of the expense of the Special Master, who was

appointed at its request." (*Id.*) The Magistrate Judge therefore shifted 75% of the Special Master's fees and costs to Thomas Nelson and ordered that EPAC pay the remaining 25%. (*Id.*)

The Magistrate Judge also awarded attorneys' fees and costs to EPAC under Federal Rule of Civil Procedure 37, which provides for payment of "the movant's reasonable expenses incurred in making the motion, including attorney's fees[,]" if a motion to compel is granted. Fed. R. Civ. P. 37(a)(5)(A). The Magistrate Judge found that "[p]roduction of Postini and Red Prairie data from other sources as a result of the Special Master's involvement in this case is akin to discovery being produced after a motion to compel." (Doc. No. 379, PageID# 9813.) The Magistrate Judge further found that, "had Thomas Nelson complied with basic data retention protocols or owned up to the loss of evidence more readily, both parties likely would not have incurred what are surely significant fees and expenses. Because they did, Thomas Nelson must shoulder some of that burden." (*Id.*) The Magistrate Judge concluded that "Thomas Nelson is assessed fifty percent of the reasonable costs and attorneys' fees incurred by EPAC during the Special Master proceedings." (*Id.*)

EPAC and Thomas Nelson moved for review of the Magistrate Judge's order (Doc. Nos. 382, 391), and both parties challenged this allocation of reasonable attorney's fees and costs. In response to Thomas Nelson's objection that EPAC's litigation tactics drove up its fees, Chief Judge Crenshaw found that "any attorney's fees that are found to be part of the 'petulant, scorched earth nature of EPAC's responses coupled with loose assertions of fact' that 'undermined the process' will not be found reasonable" and, therefore, would not be awarded. (Doc. No. 435, PageID# 11448 (quoting Doc. No. 226, PageID# 3827 n.37); *see also id.* ("Thomas Nelson will only be responsible for 50% of EPAC's <u>reasonable</u> attorney's fees.").) EPAC objected "that Thomas Nelson should pay all of EPAC's attorney's fees and expenses and the Special Master's

fees and expenses related to the Special Master proceedings, and all of EPAC's attorney's fees and expenses for additional email-related depositions." (*Id.* at PageID# 11448–49.) Chief Judge Crenshaw rejected that position, recognizing that "[t]he Magistrate Judge found that EPAC requested the Special Master and should have to shoulder some of the burden of the 'discovery marathon'" and "that EPAC would have incurred some discovery expenses in the normal course of litigation, and should not be reimbursed for those expenses." (*Id.* at PageID# 11449.) Chief Judge Crenshaw thus affirmed the Magistrate Judge's attorney's fee allocation.

That was, of course, not the end of this case's "discovery marathon," and the Court had occasion to address attorney's fees and costs in the context of other discovery disputes.

The Magistrate Judge addressed the parties' competing proposals stemming from a March 11, 2015 mediation with the Special Master to establish a protocol for Thomas Nelson's production of restored e-mail archives. (Doc. No. 472.) The Special Master found that the protocol agreed to before him provided EPAC "an unprecedented level of access" to Thomas Nelson's e-mail archives and that, "[i]n exchange, EPAC agreed 'to undertake this burden of review at [its] sole cost' and to 'not seek to shift the cost of . . . this additional review or associated cost to [Thomas Nelson] even as a sanction.'" (*Id.* at PageID# 12240–41 (second and third alterations in original) (quoting Doc. No. 217-3, PageID# 3484; Doc. No. 217-6, PageID# 3532).) After the parties could not agree as to the implementation of the March 2015 protocol, the Magistrate Judge set a protocol (identified as the Delta Set Protocol) establishing, among other things, that "EPAC may not seek cost-shifting or cost-sharing of the cost of this production and review, including any vendor expenses, even as a sanction, under the terms to which EPAC agreed in establishing the March 2015 protocol." *(Id.* at PageID# 12243.) After the parties again disagreed as to the allocation of the Delta Set Protocol costs, the Magistrate Judge found that "[a]ll . . . costs of executing the Delta

Set Protocol are allocated to EPAC under the terms of the parties' March 2015 agreement."[1] (Doc. No. 619, PageID# 15493.)

The Magistrate Judge addressed EPAC's continued attempts "to pursue the restoration of Thomas Nelson's ERP/WMS data" after the Special Master issued his report. (Doc. No. 942, PageID# 19912.) Thomas Nelson "unequivocally and repeatedly" articulated its position that there was no ERP/WMS data that had not been produced, but did not object to EPAC attempting further restoration. (*Id.* at PageID# 19914.) The Magistrate Judge found, "first, that EPAC ha[d] already prevailed in obtaining a permissive adverse jury instruction against Thomas Nelson regarding its preservation of the ERP/WMS data" that served as adequate sanction for the loss of that information under Federal Rule of Civil Procedure 37(e). (*Id.* at PageID# 19913.) However, because Thomas Nelson did not object to EPAC's further attempts to restore the ERP/WMS data, the Magistrate Judge ordered that, "[i]f EPAC identifie[d] any source of data it want[ed] to restore[,]" it could do so and that "EPAC shall bear the cost of any data restoration . . . ." (*Id.* at PageID# 19914.)

The case proceeded to jury trial and, on January 18, 2019, the jury returned a verdict in EPAC's favor. (Doc. No. 1053.) The jury awarded EPAC $3,000,000.00 in compensatory damages for Thomas Nelson's breach of the parties' Master Services Agreement; $60,000.00 in compensatory damages for Thomas Nelson's fraudulent concealment; and $12,000,000.00 in punitive damages. (Doc. No. 1061.)

---

[1]     The Magistrate Judge also ordered that Thomas Nelson bear the cost of creating a privilege log that complied with the Court's March 29, 2018 order. (Doc. No. 619, PageID# 15493.) Thomas Nelson states that it "ultimately decided not to pursue" its fees and costs related to execution of the Delta Set Protocol "given the modest amount at issue—about $40,000." (Doc. No. 1162, PageID# 24591 n.13.)

In its motion, EPAC asks the Court to award it fifty percent of $1,260,138.14 in fees and $174,027.10 in costs. (Doc. No. 1161, PageID# 23944.)

## II.     Legal Standard

The basis of the Court's award of attorney's fees to EPAC in the context of the Special Master proceedings is Federal Rule of Civil Procedure 37(a)'s provision that, if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). If a motion is denied in part and granted in part, the court "may . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). "If the court determines to award expenses and fees [under Rule 37(a)(5)], it is for the court to decide what amount is proper." 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2288 (3d ed. updated Apr. 2021).

## III.    Analysis

In addressing the Special Master's report and recommendation, the Magistrate Judge ordered that "Thomas Nelson is assessed fifty percent of the reasonable costs and attorneys' fees incurred by EPAC during the Special Master proceedings." (Doc. No. 379, PageID# 9813.) EPAC, however, bases its motion on a clause in the following sentence: "Within twenty-eight days from entry of this order, EPAC shall submit an itemized schedule of the reasonable costs and attorneys' fees it incurred in connection with the Special Master proceedings." (*Id.*) Hitching its wagon to an expansive interpretation of the phrase "in connection with," EPAC now asks the Court to award it fifty percent of its attorney's fees and costs related to a broad range of the discovery-related proceedings that have taken place in this action and asserts "that the amount of reasonable costs and attorneys' fees [it] incurred in connection with the Special Master proceedings was $1,434,165.24[,]" calculated as $1,260,138.14 in fees and $174,027.10 in costs. (Doc. No. 1161,

PageID# 23944.) Thomas Nelson argues that "the bulk of the fees and expenses EPAC seeks were not incurred during the Special Master proceedings" and that, "because EPAC has otherwise failed to prove that those fees and expenses are reasonable, the Court should deny EPAC's motion entirely or award EPAC 50% of only a nominal amount." (Doc. No. 1162, PageID# 24581.)

### A.  Scope of the Award

The Court must begin by defining the scope of the fee award made in its March 29, 2018 order for "reasonable costs and attorneys' fees incurred by EPAC during the Special Master proceedings." (Doc. No. 379, PageID# 9813.) EPAC takes the position that, because the parties' discovery disputes that were the subject of the Special Master's report persisted through the remainder of the litigation, its attorney's fees and costs "incurred in connection with the Special Master proceedings" continued to accrue long after the Special Master finished his work. (Doc. No. 1163, PageID# 24705.) EPAC argues that, if its fee request addressed only the parties' proceedings before the Special Master, it "would omit much of the Special Master-related fees and expenses that Thomas Nelson's discovery misconduct caused." (*Id.* at PageID# 24705 n.4.) EPAC continues that, "[s]ince the Court ordered Thomas Nelson to pay EPAC's attorneys' fees and costs involved **in connection with** *the Special Master proceedings*, Thomas Nelson is responsible for EPAC's fees and costs involved in the Delta Set Protocol and ERP/WMS data and tapes production and restoration processes applied by this Court to address deficiencies in the Special Master's incomplete investigation, including the fees identified in EPAC's supplemental fee declarations." (*Id.* at PageID# 24704.) EPAC concludes that the Court's fee "inquiry must begin and end with the truth that all of the expenses for which EPAC seeks recovery were caused by Thomas Nelson, not EPAC, and they were all incurred in connection with and were related to the Special Master proceedings . . . ." (*Id.* at PageID# 24705 n.4.)

8

Thomas Nelson, on the other hand, argues that EPAC may only seek fees and costs "incurred during the Special Master proceedings[,]" which, it asserts, has a defined temporal and substantive scope: extending from the appointment of the Special Master on November 18, 2014, to the issuance of his report and recommendation on January 28, 2016, and including only fees related to the Special Master's work. (Doc. No. 1162, PageID# 24581.) Thomas Nelson points out that the Magistrate Judge separately ordered that EPAC could not seek to recover any costs from execution of the Delta Set Protocol, its review of Thomas Nelson's e-mail archives, and its recovery of ERP/WMS database information. (*Id.* at PageID# 24582 (citing Doc. Nos. 472, 619, 942).) It also cites Chief Judge Crenshaw's order that fees arising out of "'petulant, scorched earth'" litigation tactics will not be considered reasonable under Rule 37(a). (*Id.* at PageID# 24582 (citing Doc. No. 435).) Finally, Thomas Nelson argues that EPAC should not recover for fee entries not accompanied by subject-matter descriptions, for "block-billed entries", or for fees incurred by out-of-state counsel Redgrave LLP. (*Id.* at PageID# 24592-94.)

EPAC's expansive reading of the Court's award of fees and costs in its March 29, 2018 order is not supported by the record. The Magistrate Judge found, in the context of addressing the Special Master's report and recommendation, that EPAC was entitled to "fifty percent of the reasonable costs and attorneys' fees [it] incurred . . . during the Special Master proceedings." (Doc. No. 379, PageID# 9813.) This was a backward-looking order, adopting and implementing in part what the Special Master recommended as the outcome of his investigation. The Magistrate Judge rejected the Special Master's recommendation that EPAC receive "no more than a nominal award of attorney's fees" and allowed EPAC to recover fifty percent of the fees and costs it had incurred during the Special Master proceedings. (*Id.* at PageID# 9771.) The Magistrate Judge's award stopped there. It was not intended to—and does not—include discovery-related proceedings other

than the parties' work with the Special Master. EPAC's attempt to stretch the Court's words to encompass far more—including fees and costs that the Magistrate Judge specifically ordered to be paid by EPAC in other orders—is not well-taken.

The Court will award EPAC what it designated in its March 29, 2018 order: fifty percent of the reasonable fees and costs incurred by EPAC during the Special Master proceedings. This includes (1) fees and costs incurred in moving for the Special Master's appointment (as Rule 37(a)(5) provides for payment of "reasonable expenses incurred in making the motion, including attorney's fees") and (2) fees and costs incurred between the date of the Special Master's appointment and the date on which the Special Master issued his report and recommendation for tasks directly related to the parties' work with the Special Master. The award does not include (1) fees and costs for EPAC's efforts to remove the Special Master during his appointment, (2) fees and costs incurred after the Special Master submitted his final report and recommendation, (3) fees and costs incurred for the document review associated with the March 2015 protocol, execution of the Delta Set Protocol, or recovery of ERP/WMS data, or (4) fees and costs that are not reasonable.

## B. Reasonable Attorney's Fees

Having defined what falls within the scope of the award, the Court must now determine the amount of EPAC's qualifying reasonable attorney's fees and costs. The first step in doing so is "assess[ing] whether the fees requested relate to the conduct the Court found fell under Rule 37." *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, 259 F.R.D. 323, 328 (N.D. Ill. 2009). The Court is hindered significantly in that task by the records that EPAC has provided in support of its motion. First, EPAC has filed too much, including with its motion records that document time allocated to tasks not encompassed by the Court's award. Second, a large number of the time entries submitted by EPAC's counsel reflect multiple tasks, some that are related to the Special Master proceedings and some that are not. Third, many entries contain vague descriptions

of tasks that the Court cannot identify with certainty as being related to the Special Master proceedings.[2]

"The 'key requirement for an award of attorney fees is that "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."'" *United States ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 148–49 (6th Cir. 2010) (alteration in original) (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008)). Generally, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). This includes "maintain[ing] billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. "Where fee documentation is voluminous, some courts have found it impractical to engage in a precise line-by-line analysis and favor across-the-board reductions." *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, No. 1:98-CV-479, 2008 WL 906031, at *4 (W.D. Mich. Mar. 31, 2008) (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)); *see also Coulter v. Tennessee*, 805 F.2d 146, 152 (6th Cir. 1986) (endorsing district court's "across the board reduction[ ]" of fee

---

[2]     For example, one entry dated February 9, 2015, and recording 1.7 hours of work includes: "Receipt and review email from Sasha Dobrovolsky; revised correspondence to Taber, review of Taber correspondence in connection with same; email to Sasha Dobrovolsky; forwarded same letter to Taber after telephone conference with Sasha Dobrovolsky; review emails re Cloud Sherpas issues; review of Cloud Sherpas Second Production in connection with same; receipt and review email from Taber re preservation, production issues; email to Sasha Dobrovolsky re same; receipt and review email from Craig Ball; email to Sasha Dobrovolsky re same; review of [redacted] revised email to Taber after several emails with Sasha Dobrovolsky and forwarded to Taber; email with Sasha Dobrovolsky re same." (Doc. No. 1162-1.)

award "by a percentage figure"), *abrogated on other grounds by Ne. Ohio Coal. For the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016).

### 1. Fees for Bradley Counsel

The Court has endeavored to determine what of the time entries EPAC has provided fall within the scope of its award. After conducting a close review of EPAC's counsel's contemporaneous time records, the Court finds that it simply cannot do so with the "high degree of certainty" required to make a specific award. *Lefan*, 97 F. App'x at 149. Nor is the Court "responsible for ferreting out and categorizing the relevant time spent on each matter." *Lorillard Tobacco Co.*, 259 F.R.D. at 329 (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in" the record.)). "[I]f counsel's block billing relies on inadequate descriptions of the work performed, 'the district court may reduce the award accordingly.'" *Howe v. City of Akron*, 705 F. App'x 376, 383 (6th Cir. 2017) (quoting *Smith v. Serv. Master Corp.*, 592 F. App'x 373, 371 (6th Cir. 2014)); *see also Hensley*, 461 U.S. at 433. Accordingly, the Court will reduce EPAC's requested fee award to an amount that reflects the accuracy of its records.

The Court determined the amount of this reduction by identifying the time records of EPAC's counsel that (1) fall within the time period of the Special Master's appointment and include only tasks directly related to the Special Master proceedings (not including time identified as relating to EPAC's motion to remove the Special Master) or (2) include only tasks directly related to EPAC's motion for the Special Master's appointment.[3] The Court then calculated the number of hours and accompanying fee attributable to those entries and found it to equal

---

[3]    The Court has not excluded any otherwise-eligible time entries because they are linked to litigation conduct that Thomas Nelson deems unreasonable.

approximately 20% of EPAC's total requested fee award. The Court will therefore reduce EPAC's requested attorney's fee award by 80%. The Court recognizes that its methodology may seem unsophisticated. However, "in assessing fees, district courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply do 'rough justice.'" *Ne. Ohio Coal. for the Homeless*, 831 F.3d at 703 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). The Court is satisfied that its estimates reflect the "overall sense of [this] suit" and achieve "rough justice" here. *Id.*

The Court determines that the reasonable attorney's fee award to EPAC's Bradley counsel is $131,202.00, for which Thomas Nelson is assessed $65,601.00.

### 2. Fees for Redgrave LLP Counsel

The Court also will not award fees and costs for work performed by EPAC's out-of-town specialist Jonathan M. Redgrave and his colleagues at Redgrave, LLP. EPAC states that, "[o]nce it became clear that the Special Master proceedings would not be concluded within the several months anticipated, EPAC determined that it made sense to enlist the assistance of national eDiscovery counsel with substantial and particularized experience working with Special Masters (and serving as a Special Master) and identified and engaged Mr. Redgrave." (Doc. No. 1161, PageID# 23948.) "Mr. Redgrave is a Washington, DC-based attorney who focuses on eDiscovery issues[,]" a founding member and first Chair of The Sedona Conference, and an author of many publications regarding eDiscovery and the use of special masters. (*Id.* at PageID# 23948–49.) Mr. Redgrave did not move to enter an appearance in this case until February 18, 2016, after the Special Master issued his report and recommendation. (Doc. No. 240.) Although EPAC has submitted time records showing that Mr. Redgrave began working for EPAC on May 22, 2016, it appears that he was initially retained to assist EPAC with its motion to remove Ball as the Special

Master and to identify others to serve in that capacity.[4] Mr. Redgrave's later time entries appear to reflect work primarily associated with the identification and retaining of vendors to execute the March 2015 protocol and related document review, which are excluded from this award. It appears that the majority, if not all, of Mr. Redgrave's work falls outside the scope of the fee award that is the subject of this Order.[5]

### C.     Costs

In its original motion for attorney's fees and costs, filed on April 26, 2018, EPAC requested an award of costs in the amount of $1,379.70. (Doc. No. 417-6.) On February 27, 2019, EPAC filed a second itemization of costs in the amount of $16,120.00. (Doc. No. 1096-2.) The Court finds that all of EPAC's original requested costs fall within the scope of this Order and are appropriately awarded. The second request does not fare as well, and the Court has excluded the following requested costs as outside the scope of this Order: (1) the September 30, 2018 DSicovery in the amount of $3,562.50, for work outside the relevant timeframe and related to execution of Delta Set Protocol; and (2) the July 15, 2016 LegalVision Inc. invoice in the amount of $6,873.75, for work outside the relevant timeframe and not clearly related to the Special Master proceedings. (Doc. No. 1096-2.) Accordingly the Court will award EPAC costs as follows:

$1,379.70 + ($16,120.00 - $3,562.50 – 6,873.75) = $7,063.45 x 50% = $3,531.73.

---

[4]     For example, Mr. Redgrave's third time entry, from May 26, 2015, reflects that he "[r]eview[ed] background materials from client concerning matter and substitution of Special Master[.]" (Doc. No. 1161-2.) Later entries reflect that Mr. Redgrave researched, drafted, and revised the motion to substitute a new special master and identified and communicated with potential special master candidates. (*Id.*)

[5]     Because the Court is not awarding any fees or costs to Mr. Redgrave, it will not address Thomas Nelson's argument that his hourly rate exceeds what is reasonable in this case or that his services were not necessary.

**IV.      Conclusion**

For these reasons, the Court ORDERS Thomas Nelson to pay EPAC's reasonable attorney's fees incurred during the Special Master proceedings in the amount of $65,601.00 and reasonable costs incurred during the Special Master proceedings in the amount of $3,531.73.

It is so ORDERED.

_____

ALISTAIR E. NEWBERN
United States Magistrate Judge